J^BYRNES, Chief Judge.
STATEMENT OF THE CASE:
Augustus Flowers was charged by grand jury indictment on March 26, 1992, with seven counts of distribution of heroin, a violation of LSA-R.S. 40:966, and with one count of possession with intent to distribute heroin, also a violation of R.S. 40:966. At his arraignment on April 3, 1992, he pled not guilty. The trial court found probable cause and denied the motion to suppress the evidence on May 15, 1992. A twelve member jury found him guilty as charged on August 13, 1992. He was sentenced on September 3, 1992, to life imprisonment without benefit of parole, probation or suspension of sentence on each count; the sentences are to run concurrently. He filed an errors patent appeal, and this court affirmed. State v. Flowers, 92-2356 (La.App. 4 Cir. 6/15/93), 622 So.2d 874, unpub. Following an application for post-conviction relief, this out of time appeal was granted on February 9, 2000, pursuant to State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241.

FACTS:

This court set out the facts in the original unpublished opinion [1]
NOPD Officer Eddie Selby of the Narcotics Division conducted a surveillance of 3717 Erato Street beginning about 5 A.M. on February 6, 1992. He saw the appellant standing in the courtyard there about 8:40 A.M. when a 1975 Lincoln parked nearby and its driver talked with the defendant, who walked into the apartment, returned, handed the man a small object and accepted currency from him. The 1975 Lincoln was stopped after leaving the apartment and the driver was found to have two foils of heroin. At 9:15 A.M. the officer saw a blue Chevy pull up, two men walked into the courtyard and the process described above was repeated. The two men were stopped some distance from the observation site and they were found to have heroin. At 9:25 A.M. two Chevy pickup trucks drove up; both drivers approached the appellant and bought something from him. Both were later stopped and found to have heroin. Next a 1975 Ford came in; the passenger got out, dealt with the appellant and returned to the Ford. Later the truck |¡>was stopped and the occupants found to have heroin. At 11:40 A.M. a Honda Accord parked in the 3700 block of Erato Street. The driver walked into the courtyard, met with the appellant, received a small object, and paid currency. This driver, too, was stopped and found to be carrying narcotics.[2] Again at 12:15 a transaction occurred in which three men in a blue Hyundai drove into the courtyard, two men got out and purchased something.[3] When they were stopped, narcotics were recovered. Yet another transaction occurred when a man dressed in a white shirt and pants walked to the steps of 3717 Erato Street, spoke with the appellant, and exchanged money for a small object. This man was stopped and no drugs were found. Yet moments later he returned to the courtyard and spoke to the appellant who became very excited and *688 left the courtyard. Shortly thereafter the appellant began walking towards Martin Luther King Boulevard. Officer Selby immediately ran after the appellant and arrested him. The apartment on Erato Street was searched and nine clear plastic bags containing many small folded pieces of tin foil were found; the foil contained a powder that tested to be heroin. NOPD Detective Steven Imbra-guglio testified that he too observed the narcotic sales but from a different vantage point. Imbraguglio verified the story related by Officer Selby.
NOPD Detective Jake Schnapp of the Narcotics Division testified that he and Detective Ray' Vickers could talk with Officers Selby and Imbruguglio by radio; after what appeared to be a narcotics sale, Selby or Imbraguglio would describe the car to Schnapp who would then stop the vehicle some distance from the purchase point. Detectives Dwayne Marshall, Felix Joseph, Wayne Jusselin, John Brunet, and Sam Poole, other narcotics officers, assisted in stopping the vehicles after the purchases were made. Major Stewart, who was arrested for possession of heroin after driving off in the blue Hyundai, testified for the defense that he did not purchase heroin from the appellant but from someone else in the Calliope Project. Stewart admitted having prior convictions for attempted murder and simple burglary. Hillary Pierce who was also arrested for purchasing heroin from the Calliope Project, testified that he did not know the appellant and did not purchase heroin from him but from a man named “Nick.” Pierce admitted having prior convictions for possession of heroin and misdemeanor theft.

\ .ERRORS PATENT:

A review of the record reveals what would seem to be one error patent. Defendant was convicted of distribution of heroin, and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. La. R.S. 40:966(B) does not provide for the denial of parole for distribution of heroin. La. R.S. 40:966(B)(1) provides that the penalty for this offense is life imprisonment at hard labor without benefit of probation or suspension of sentence. Courts have for years held that the denial of parole to a defendant sentenced to life imprisonment under this statute was an error patent. See State v. Marks, 337 So.2d 1177, 1180, n. 1 (La.1976); State v. Jones, 559 So.2d 892, 893 (La.App. 4 Cir. 1990). However, in Richardson v. La. Dept. of Public Safety & Corrections, 627 So.2d 635 (La.1993), the Louisiana Supreme Court concluded that it was not error for a trial court to deny the benefit of parole to a defendant sentenced pursuant to the same statutory provision, because under La. 15:574.4(B) a defendant sentenced to life imprisonment is not eligible for parole until his life sentence is commuted to a fixed number of years. In affirming the sentence imposed without the benefit of parole, the court noted that parole eligibility could not be considered until the defendant’s life sentence was commuted to a fixed number of years. In accordance with Richardson, we find no error in the trial court’s denying defendant the benefit of parole.

ASSIGNMENT OF ERROR ONE:

The defendant argues that the trial court erred in refusing to excuse a potential juror for cause.
|4The Louisiana Supreme Court reviewed the law on point in State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, 686-687:
*689 La. Const, art. I, § 17 guarantees that “[t]he accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law.” La. Code Crim.P. art. 799 provides the defendant in a death penalty case with twelve peremptory challenges. Therefore, when a defendant uses all of his peremptory challenges, a trial court’s erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Maxie, 93-2158, p. 15 (La.4/10/95); 653 So.2d 526; State v. Robertson, 92-2660, (La. 1/14/94); 630 So.2d 1278, 1280; State v. McIntyre, 365 So.2d 1348, 1351 (La.1978). A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La. Code Crim.P. art. 800. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. Robertson, 630 So.2d at 1281; State v. Ross, 623 So.2d 643, 644 (La.1993); State v. Comeaux, 514 So.2d 84, 93 (La.1987). The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. Robertson, 630 So.2d at 1281; Ross, 623 So.2d at 644. Since defendant exhausted all of his peremptory challenges in this case, we are left only with the task of deciding whether the trial judge erred in denying defendant’s challenge for cause of prospective juror Gil-ford Warner.
La.Code Crim.P. art. 797 provides in pertinent part that the state or the defendant may challenge a juror for cause on the grounds that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
| b(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court.
In this case, the defendant exhausted his peremptory challenges. He now complains that the trial court erred in denying a challenge for cause. At issue is a juror who first said the following in response to questions concerning whether he would automatically dismiss the testimony of the defendant because the defendant was a convicted felon and was wearing prison attire, or whether he could weigh the evidence:
Well, I mean you put someone who’s in a prison uniform there, he’s kind of lost his credibility a little bit. It’s human nature, and you see a policeman in uniform, he’s the symbol of our justice system, so it’s very easy, perhaps, to believe a policeman and perhaps not *690 believe a prisoner. He’s obviously betrayed trust somewhere along the way. I don’t know. I’d have to just listen to all the facts.
On further questioning by the trial ' judge, the juror repeatedly said that he would be willing to listen to the facts. He said that he would not hold the fact that the defendant was in jail against him, and that, “I can listen to all the facts and form my own conclusion.”
Accordingly, it appears that the juror was impartial, and that he could accept the law as given to him. The trial judge did not err in denying the challenge for cause.
This assignment is without merit. ASSIGNMENT OF ERROR TWO:
| fiThe defendant argues the evidence was insufficient.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Guy, 97-1387, p. 10 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 237-38, writ den. 99-1982 (La.1/7/00), 752 So.2d 175, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28.
17Here, officers watched the defendant going in and out of an apartment exchanging objects for currency. Nine of his purchasers were stopped and found to be in possession of heroin. The apartment was found to contain heroin. Although not mentioned in the original statement of the facts[4], a further reading of the transcript reveals that at trial the State introduced *691 eight packets of heroin, representing the eight distributions for which the defendant was convicted. These facts are sufficient to support the seven convictions for distribution of heroin and the one conviction for possession with intent to distribute heroin.
The evidence was sufficient to support the convictions.
This assignment is without merit.

ASSIGNMENT OF ERROR THREE:

The defendant argues his statutorily mandated minimum sentences are excessive.
The Louisiana Supreme Court recently reviewed the law on point when the defendant receives the mandatory minimum sentence, specifically life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, and State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (J. Plotkin concurring), the Court stated:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully | ^tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Lindsey, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343.
Here, the defendant put forth no facts that he is exceptional.
This assignment is without merit.

DECREE:

For the foregoing reasons, defendant’s convictions and sentences are affirmed.

CONVICTIONS AND SENTENCES AFFIRMED.

. State v. Flowers, 92-2356 (La.App. 4 Cir. 6/15/93), 622 So.2d 874, unpub .

. Hillary Pierce, the driver, testified for the defense.

.One of these men, Major Stewart, testified for the defense.

. State v. Flowers, 92-2356 (La.App. 4 Cir. 6/15/93), 622 So.2d 874, unpub.